UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALEITHIA ANN F.,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL<br>Commissioner of Social Security,[1]<br><br>Defendant. | Case No. 17 C 9158<br><br>Magistrate Judge Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

Plaintiff Aleithia F.[2] seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"). The parties have filed cross-motions for summary judgment. For the reasons that follow, Aleithia's Motion for Summary Judgment [11] is granted, the Commissioner's Motion for Summary Judgment [18] is denied, and the ALJ's decision is reversed, and this case is remanded for further proceedings consistent with this opinion.

### I. BACKGROUND

Aleithia has a high school education and completed one year of college. (R. 24, 68, 225). Between 2000 and 2008, she held a variety of full-time and part-time jobs, working as a mailroom clerk, a receptionist, a cash accounting clerk, a home healthcare provider, and a teacher's assistant at a day care facility. *Id.* at 66-68, 226, 293, 295-96. In January 2011, after undergoing a hysterectomy the previous month, Aleithia began working as a medical administrative assistant.

---

[1]     Andrew M. Saul has been substituted for his predecessors, Nancy A. Berryhill and Carolyn W. Colvin, as Defendant in this case. *See* Fed. R. Civ. P. 25(d).

[2]     Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff as "Aleithia F." or "Aleithia."

*Id.* at 49-50, 225-26. A few days after she started this job, Aleithia experienced extreme surgery-related pain when she went to retrieve a heavy file. *Id.* at 50, 225. Aleithia reported that she was then let go because she was not able to perform her duties as a medical administrative assistant. *Id.* at 50-51, 225. Aleithia has not attempted to work since then. *Id.* at 51.

In December 2012, Aleithia filed a DIB application alleging that she became disabled on September 24, 2008 due to fibromyalgia, major and severe depression, anxiety, and asthma. (R. 93, 112, 224). After Aleithia's application was denied initially and upon reconsideration, an administrative law judge held a hearing. *Id.* at 33-77, 93, 111-16, 121-25. Aleithia, represented by counsel, testified, as did a medical expert ("ME") and a vocational expert ("VE"). *Id.* at 33-35, 38-74. At the hearing, the ALJ accepted Aleithia's request to amend her alleged disability onset date to May 30, 2011. *Id.* at 13, 35-36, 220.

On February 9, 2016, the ALJ issued an unfavorable decision denying Aleithia's DIB claim. (R. 10-32). At the outset, the ALJ determined that the relevant time period was from September 24, 2008, Aleithia's originally alleged onset date,[3] through March 31, 2014, her date last insured. *Id.* at 13-14, 26. Following the required five-step analysis for evaluating disability, the ALJ found that Aleithia had not engaged in substantial gainful activity during the period from her alleged onset date of September 24, 2008 through her date last insured of March 31, 2014 (step one). *Id.* at 15. At step two, the ALJ found that Aleithia's degenerative disc disease of the cervical and thoracic spine, cervicalgia, tendinosis of the distal supraspinatus tendon with small partial thickness tear of the left shoulder, fibromyalgia, torn medial meniscus of the right knee, osteoarthritis, asthma/allergies, obesity, major depressive order, and anxiety disorder were severe

---

[3] Despite accepting Aleithia's amended disability onset date of May 30, 2011 (R. 13, 35-36), the ALJ proceeded to analyze Aleithia's disability claim based on her originally alleged onset date. *See, e.g.*, *id.* at 14-15, 26. This inconsistency does not affect the Court's decision.

2

impairments (step two). *Id.* at 15-16. The ALJ determined, however, that none of these impairments met or medically equaled the severity of a listed impairment (step three). *Id.* at 17-20.

The ALJ then concluded that Aleithia retained the residual functional capacity ("RFC") to perform light work[4] as defined in 20 C.F.R. § 404.1567(b) with additional postural, environmental, and mental limitations. (R. 20). Specifically, the ALJ found that Aleithia could never climb ladders, ropes or scaffolds; she could occasionally stoop, kneel, crouch, crawl and climb ramps and stairs; she could never work at unprotected heights; she must avoid concentrated exposure to extreme cold and even moderate exposure to vibration; she could not do any commercial driving; she could perform the mental demands of simple routine repetitive work; she could not work with the general public as part of routine job duties; she could only have occasional interaction with coworkers and supervisors; and she could not perform fast-paced production line assembly type work, but could perform work of a variable rate. *Id.* Given this RFC, the ALJ determined that Aleithia was unable to perform her past relevant work as a cash account clerk and mail clerk (step four). *Id.* at 24. The ALJ also determined that Aleithia could perform other light exertional jobs that existed in significant numbers in the national economy, such as hand packager, assembler, and sorter (step five). *Id.* at 24-25. The ALJ further noted that the VE identified jobs that Aleithia could perform "[e]ven if the hypothetical situation was amended to sedentary work."[5] *Id.* at 25. Based on these step-five findings, the ALJ found that Aleithia was not disabled. *Id.* at 25-26. The

---

[4] Light work requires lifting 10 pounds frequently and up to 20 pounds and a "good deal" of walking or standing. 20 C.F.R. § 1567(b).

[5] Sedentary work involves lifting no more than 10 pounds at a time and the ability to sit for six hours in an eight-hour work day. SSR 83-10, 1983 WL 31251, at *5 (1983). The sedentary jobs identified by the VE were bench packager, assembler, and sorter. (R. 70-71). Assembler and sorter jobs were available at both the light and sedentary exertional levels. *See id.* at 69-73.

3

Appeals Council denied Aleithia's request for review on October 27, 2017, leaving the ALJ's February 9, 2016 decision as the final decision of the Commissioner. *Id.* at 1-5; *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

## II. DISCUSSION

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a sequential five-step inquiry, asking: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the claimant's impairment meet or equal an impairment specifically listed in the regulations? (4) Is the claimant unable to perform a former occupation? and (5) Is the claimant unable to perform any other work in the national economy? *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); 20 C.F.R. § 404.1520(a)(4). "An affirmative answer leads either to the next step, or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski*, 760 F.2d at 162 n.2.

Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *See Villano*, 556 F.3d at 562; *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In reviewing an ALJ's decision,

the Court may "not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and her conclusions. *See Steele v. Barnhart*, 290 F.3d 936, 938, 941 (7th Cir. 2002) (internal citation and quotations omitted). When the ALJ's "decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

The ALJ found Aleithia not disabled at step five of the sequential evaluation process because she retained the RFC to perform other work that existed in significant numbers in the national economy. Aleithia challenges the ALJ's non-disability finding on the basis that the ALJ inadequately and improperly assessed her statements about the intensity, persistence, and limiting effects of her symptoms, specifically with respect to her fibromyalgia.[6] As explained below, the ALJ's subjective symptom assessment related to Aleithia's fibromyalgia is unsupported by substantial evidence.

To properly evaluate a claimant's symptoms (including pain), the ALJ must follow a two-step process. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996)[7]; *see also* SSR 12-2p ("Evaluation of Fibromyalgia"), 2012 WL 3104869, at *5 (July 25, 2012) (directing ALJs to follow the two-

---

[6] Fibromyalgia is a "condition whose primary symptom is pain and stiffness in the muscles and joints." *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014); *Sarchet v. Chater*, 78 F.3d 305, 306(7th Cir. 1996) (fibromyalgia's "principal symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness, and . . . multiple tender spots."). "Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia." *Sarchet*, 78 F.3d at 306.

[7] In 2016, the Social Security Administration rescinded SSR 96-7p and issued SSR 16-3p. SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). However, SSR 96-7p still governs cases decided before March 28, 2016. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462-03, 2017 WL 4790249, at n.27 (Oct. 25, 2017). SSR 96-7p applies to the ALJ's decision here, which issued on February 9, 2016. (R. 26).

step process set forth in SSR 96-7p when evaluating a claimant's statements about her fibromyalgia symptoms and functional limitations). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the individual's pain or other symptoms." *Id.* "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, [the ALJ] must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *Id.*

The Court gives deference to the ALJ's evaluation of a claimant's subjective symptom allegations and will overturn it only if it is "patently wrong." *Murphy v. Colvin*, 759 F.3d 811, 815-16 (7th Cir. 2014). An ALJ must justify her evaluation with "specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013); *Groskreutz v. Barnhart*, 108 Fed. Appx. 412, 416 (7th Cir. 2004) (courts "will affirm a credibility determination as long as the ALJ's reasons are supported by record," but "will reverse when the ALJ's decision 'is unreliable because of serious mistakes or omissions.'"). In evaluating a claimant's subjective symptom allegations, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations[.]" *Villano*, 556 F.3d at 562; *see* 20 C.F.R. § 404.1529(c) (June 13, 2011 to Mar. 26, 2017); SSR 96-7p, 1996 WL 374186, at *3. Similarly, at step two of the fibromyalgia symptom evaluation process, SSR 12-2p directs ALJs to "consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms." SSR 12-2p, 2012 WL 3104869, at *5. Ultimately,

6

"the ALJ must explain her [subjective symptom evaluation] in such a way that allows [the Court] to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Murphy*, 759 F.3d at 816 (internal quotations omitted).

At step two of the five-step process, the ALJ determined that Alethia's fibromyalgia was among her severe impairments. The ALJ noted that Alethia was diagnosed with fibromyalgia in November 2012 and she "experiences generalized tender points bilaterally and diffuse pain." (R. 16). Alethia testified at the hearing that her fibromyalgia pain is "debilitating" and she "can't even stand for 10 minutes without being in pain." *Id*. 53-54. She stated that she experiences fibromyalgia pain throughout her entire body. *Id*. at 54. Alethia additionally testified that if she is active like "sweeping the kitchen floor" or "trying to wash dishes," she "pay[s] for it the very next day." *Id*. at 53. Alethia rated her pain level as an 8 or a 9 when she is active. *Id*. at 54. Alethia indicated that she had been prescribed different medications to treat her fibromyalgia, including Lyrica, which have not helped to manage her pain. *Id*. at 54-55. Alethia also testified that fibromyalgia pain wakes her up during the night and she feels tired "all the time." *Id*. at 54-56.

The ALJ found that although Aleithia's impairments could reasonably be expected to cause her alleged symptoms, her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (R. 23 ). As an initial matter, the Seventh Circuit has repeatedly criticized such findings as "meaningless boilerplate." *Akin v. Berryhill*, 887 F.3d 314, 318 (7th Cir. 2018); *Mendel R. v. Berryhill*, 2019 WL 1858510, at *8 (N.D. Ill. April 25, 2019). However, the ALJ's use of this language may be "innocuous" if it was accompanied "by an explanation for rejecting [Aleithia's] testimony." *Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013). Here, the ALJ provided enough of an

explanation for her subjective symptom evaluation that her use of the "not entirely credible" boilerplate does not itself require remand.

Turning to the ALJ's evaluation of Aleithia's subjective symptoms related to her fibromyalgia, the explanation the ALJ did provide is problematic for several reasons. The main reason the ALJ gave for finding Aleithia less than "entirely credible" was the fact that despite Aleithia's complaints of pain, her "physicians repeatedly advised her to continue normal activities as tolerated, encouraged physical activity and specifically advised against any form of bed rest." (R. 21 *citing* R. 583, 615, 621). The ALJ did not explain how Aleithia's physician's recommendation that she continue normal activities "as tolerated" and avoid bed rest is inconsistent with significant limitations caused by fibromyalgia pain and detracts from her overall credibility. In fact, this advice tends to confirm, not contradict, Aleithia's pain allegations. As shown by the relevant progress notes, Aleithia's physician advised her to continue normal activities as tolerated and to avoid bed rest because "recent guidelines promote and encourage physical activity for improv[e]ment of functionality and overall pain." (R. 583, 615, 621). In other words, this explanation (which the ALJ did not acknowledge) shows that Aleithia's physician did not make these recommendations because she believed that Aleithia was exaggerating her pain, but because she believed that these recommendations would help reduce Aleithia's overall pain. *See Carradine v. Barnhart*, 360 F.3d 751, 755-56 (7th Cir. 2004) ("Since exercise is one of the treatments that doctors have prescribed for Carradine's pain, and she does not claim to be paralyzed, we cannot see how her being able to walk two miles is inconsistent with suffering severe pain."); *Clifford*, 227 F.3d at 872 (plaintiff's walking to get exercise at her doctor's suggestion did not undermine or contradict her claim of disabling pain); *Banks v. Berryhill*, 2017 WL 4150618, at * (N.D. Ill. Sept. 19, 2017) (holding the fact that plaintiff's treating physician "*recommended*

8

Plaintiff engage in activities such as walking, swimming, or riding a stationary bicycle *as tolerated* does not undermine Plaintiff's reported symptoms and limitations, and it was improper for the ALJ to rely on exercise, as a form of therapy, to discredit Plaintiff's statements.") (emphasis in original). Further, a recommendation that an individual continue "normal activities as tolerated" is distinct from an ability to perform full-time work. *Scrogham v. Colvin*, 765 F.3d 685, 701 (7th Cir. 2014) (holding ALJ erred in overrelying on plaintiff's rehabilitative walking as proof of his fitness for full-time work). Accordingly, the ALJ erred by construing Aleithia's physician's recommendation as an inconsistency that warranted a negative credibility finding.

The ALJ also considered Aleithia's daily activities, which is a factor that "may be used to discredit a claimant's testimony." *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). At step three, while evaluating whether Aleithia's mental impairments met or equaled a listed impairment, the ALJ concluded that "[d]espite her desire to stay in her home, the claimant is able to perform a wide range of activities of daily living[.]" (R. 19); *see Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("it is proper to read the ALJ's decision as a whole, and … it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five."). Specifically, the ALJ noted that Aleithia reported watching television, sitting with her cat and dog, using the computer to check email and roam the internet, performing some minimal chores, and leaving her home to do short errands. (R. at 19). The ALJ also acknowledged Aleithia's hearing testimony "that if she engaged in strenuous activities one day[,] such a[s] sweeping the kitchen floor or washing clothes, she experiences pain throughout her whole body." *Id.* at 21.

Substantial evidence does not support the ALJ's finding that Aleithia engages in a "wide range" of daily living activities. First, the ALJ overstated the extent of Aleithia's daily activities,

which involve watching television, sitting with her pets, using the computer, performing some minimal chores, and doing short errands when she found that Aleithia is able to perform a "wide range" of activities of daily living. (R. 19); *see Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248-49 (6th Cir. 2007) (holding the ALJ mischaracterized the scope of plaintiff's daily activities as "fairly active" where plaintiff, who was suffering from fibromyalgia, was able to drive, clean her apartment, care for two dogs, do laundry, read, do stretching exercises, and watch the news); *Villano*, 556 F.3d at 563 (characterizing doing housework, shopping, driving short distances, walking dogs, and playing with grandchildren as "limited daily activities" that "do not contradict a claim of disabling pain"); *Clifford*, 227 F.3d at 872 (performing some household chores, cooking simple meals, and occasional grocery shopping are "minimal" activities).

Second, the ALJ did not discuss numerous limitations on daily activities that Aleithia described in her testimony and she ignored Aleithia's Function Report dated July 11, 2013. *See Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010) ("An ALJ may not ignore a claimant's limiting qualifications with regard to her daily activities."); *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) ("An ALJ cannot disregard a claimant's limitations in performing household activities.") For example, on a typical day, Aleithia testified she could do minor household chores for five to ten minutes at a time before needing a break. (R. 56). She further stated that her husband manages the household and does the shopping. *Id*. Aleithia testified that she only leaves the house to run short errands for one to two hours, at most. *Id*. at 48-49, 56. With respect to household activities, Aleithia indicated in the Function Report that she can only prepare simple meals like cereal for breakfast and sandwiches or microwaved leftovers for lunch and that her "husband has to cook" because she cannot stand for "any certain period of time." *Id*. at 255. In addition, while Aleithia indicated that she can empty full garbage containers and do one to two loads of laundry,

she also stated that it is "hard for [her] to do housework because of the pain [she has] all over [her] body." *Id*. at 255-56. Aleithia also maintained that she cannot lift even two pounds, squat, bend, stand, reach, walk, sit, kneel, climb stairs for any length of time, or walk more than five to six blocks before needing to stop and rest for about 15-20 minutes. *Id*. at 258. The ALJ erred by not discussing any of these limitations in Aleithia's daily activities in the subjective symptom analysis. In *Rogers*, 486 F.3d at 249, the Sixth Circuit held that the ALJ erred by failing to note that plaintiff, who suffered from fibromyalgia, received assistance from her children and by not examining the limitations plaintiff placed on her daily activities, such as that she does very little driving due to her inability to sit for longer than a few minutes, that she engages in light housekeeping only, that the extent of her care for her dog includes opening the door to let him out in the morning, that she likes to read but has difficulty holding a book, that fixing meals usually means a sandwich or cereal, and that buttoning her shirt is difficult due to the numbness in her fingers. Like in *Rogers*, the ALJ's finding that Aleithia is capable of a wide range of daily activities without considering her limiting qualifications is not supported by substantial evidence.

Moreover, a "claimant's ability to perform limited and sporadic tasks does not mean she is capable of full-time employment." *Goble v. Astrue*, 385 Fed. Appx. 588, 592 (7th Cir. 2010); *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (noting ALJs' failure to recognize the "critical differences between activities of daily living and activities in a full-time job" "is a recurrent, and deplorable, feature of opinions by administrative law judges in social security cases."); *Clifford v. Apfel*, 227 F.3d at 872 (minimal daily activities "do not establish that a person is capable of engaging in substantial physical activity."). Here, the ALJ did not explain how Aleithia's modest activities of daily living are compatible with full-time work. *Carradine*, 360 F.3d at 755 (ALJ "failed to consider the difference between a person's being able to engage in

sporadic physical activities and her being able to work eight hours a day five consecutive days of the week."). Thus, Aleithia's statements about her daily activities do not undermine or contradict her claimed symptoms and limitations.

The ALJ also mentioned evidence related to Aleithia's medication and treatment, which are other factors relevant to a subjective symptom evaluation. *See Villano*, 556 F.3d at 562; 20 C.F.R. § 404.1529(c); SSR 96-7p, 1996 WL 374186, at *3; SSR 12-2p, 2012 WL 3104869, *5. In assessing Aleithia's RFC, the ALJ noted that certain medications prescribed for Aleithia's fibromyalgia (Cymbalta, Lyrica, and topical gels) were not successful because Aleithia experienced side effects (e.g., sulfa allergy) and that her physicians prescribed her low-dose Neurontin. *Id*. at 21. The ALJ also indicated that Aleithia was referred to a fibromyalgia pain specialist and for acupuncture treatments, which were not helpful *Id.* The ALJ observed that Aleithia tried one unsuccessful session of water therapy for her pain. *Id*. Aleithia explained that the water was not warm and it caused her body to tense up. *Id*. The ALJ further noted that although Aleithia asserted that she had some side effects from her medications, notations in the record showed that she did not report any side effects from prescription nonsteroidal anti-inflammatory agents except for meloxicam, which she could not tolerate. *Id.* at 22.

The ALJ never explained, however, whether these aspects of Aleithia's medication and treatment history were consistent or inconsistent with her allegations of fibromyalgia pain. *See Perry v. Colvin*, 945 F. Supp. 2d 949, 965 (N.D. Ill. 2013) ("[S]ummarizing the evidence is not the equivalent of providing an analysis of the evidence."). Some aspects of the record—like the ineffectiveness of Aleithia's fibromyalgia medications, acupuncture, and water therapy and her referral to a pain specialist—may support her alleged symptoms. *See* SSR 96-7p, 1996 WL 374186, at *7 ("Persistent attempts by the individual to obtain relief of pain or other symptoms,

such as by increasing medications, trials of a variety of treatment modalities in an attempt to find one that works or that does not have side effects, referrals to specialists, or changing treatment sources may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms."). The ALJ's recitation of Aleithia's medication and treatment history without any further explanation as to how that evidence affects Aleithia's subjective symptom allegations does not provide the requisite subjective symptom analysis for this Court's review. "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Steele v. Barnhart*, 290 F.3d at 942; *see also Mueller v. Colvin*, 524 Fed. Appx. 282, 285 (7th Cir. 2013) ("Though [the ALJ] recited Mueller's medical records and daily activities, he did not explain whether they were consistent or inconsistent with the pain and limitations she claimed, affording this court no rationale to review meaningfully."). The ALJ therefore erred in her subjective symptom analysis by failing to provide an explanation of whether Aleithia's fibromyalgia medication and treatment history support or detract from her credibility.

Likewise, it was not sufficient for the ALJ to indicate that her RFC assessment—which limited Aleithia to light work with additional postural, environmental, and mental restrictions— gave Aleithia's testimony "every benefit of [the] doubt" and that even if "further credibility had been assessed to place [Aleithia] at the sedentary exertional level," she could still have performed a significant number of jobs. (R. 20, 23). Clearly, the ALJ did not give Aleithia "every" benefit of the doubt or she would have accepted Aleithia's testimony about her pain and limitations and found her disabled. The ALJ accepted some of Aleithia's subjective symptom statements, but did not explain which evidence or testimony she meant to credit when she gave Aleithia the benefit of the doubt. The ALJ's statement that she gave Aleithia the benefit of the doubt by limiting her to

13

light work is not an adequate substitute for actual analysis of Aleithia's subjective symptoms. *See Free v. Astrue*, 2011 WL 2415012, at *10 (N.D. Ill. June 10, 2011) (holding that giving the claimant's testimony the benefit of the doubt in finding her limited to light work did not constitute the credibility determination required by SSR 96-7p); *Reynolds v. Astrue,* 2011 WL 3584474, at *14 (N.D. Ill. Aug. 15, 2011) ("[T]he ALJ's decision to give Reynolds the 'benefit of the doubt' by limiting him to sedentary work with additional limitations is not an excuse to gloss over the credibility determination.").

There is another problem with the ALJ's subjective symptom evaluation of Aleithia's fibromyalgia. When evaluating a claimant's subjective statements about her fibromyalgia symptoms, SSR 12-2 p directs ALJs to consider "all of the evidence in the case record, including . . . statements by other people about the person's symptoms." SSR 12-2p, 2012 WL 3104869, at *5. Aleithia's sister, Jennifer Meier, completed a Third-Party Function Report dated April 12, 2013. (R. 241-48). Meier reported that she assists Aleithia approximately three days a week "with any type of help she needs." *Id*. at 241. Meier stated that Aleithia is "constantly in pain," which prevents her from "being able to do anything physical." *Id*. Meier indicated that pain makes personal care tasks such as showering, caring for her hair, shaving, and being mobile extremely difficult for Aleithia. *Id*. at 242. Meier stated that when Aleithia experiences a lot of pain, she cannot sleep. *Id*. Meier also indicated that Aleithia is not able to do housework or any physical labor because of her pain. *Id*. at 243-44. Meier stated that lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, and completing tasks are "too painful" for Aleithia. *Id*. at 246. Meier reported that Aleithia can only walk from one room to another before needing to rest for 10 to 15 minutes. *Id*. The ALJ considered Meier's Third-Party Function Report and afforded it "some weight when considering the functional limitations that exist as due to the

claimant's mental impairments." *Id*. at 23-24. The ALJ did not take into consideration the numerous physical limitations arising from Aleithia's pain described by Meier when assessing Aleithia's subjective symptoms of fibromyalgia as required by SSR 12-2p. For this additional reason, the ALJ erred in evaluating Aleithia's subjective symptom allegations of fibromyalgia pain.

The multiple errors committed by the ALJ in her subjective symptom evaluation of Aleithia's fibromyalgia cannot be deemed harmless in this case. "An erroneous credibility finding requires remand unless the claimant's testimony is incredible on its face or the ALJ explains that the decision did not depend on the credibility finding." *Pierce v. Covlin*, 739 F.3d 1046, 1051 (7th Cir. 2014). Neither exception to remand applies here. Aleithia's statements about the subjective symptoms of her fibromyalgia are not so contradicted by the medical evidence as to be incredible on their face and the ALJ did not state that her decision to find Aleithia not disabled did not depend on the subjective symptom evaluation. In this regard, the Commissioner points out that the ALJ's conclusion was consistent with the testifying medical expert's conclusion that Aleithia could perform light work and no contrary medical opinion existed. While true, Aleithia testified that she has additional limitations, and her testimony cannot be discounted without a legally adequate analysis supported by substantial evidence. *Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015) (Commissioner noted that no doctor opined that claimant had more limitations than the ALJ incorporated into her RFC assessment but claimant "*testified* that she is more limited, and her testimony cannot be disregarded simply because it is not corroborated by objective medical evidence.") (emphasis in original). If the ALJ had properly considered Aleithia's subjective complaints related to her fibromyalgia, the ALJ might have accorded less weight to the ME's opinion and could have found Aleithia more limited. *Id*. ("We are not confident that the ALJ would

have reached the same conclusion about Hill's credibility had she not inappropriately 'played doctor,' ignored possible explanations for Hill's conservative treatment, and conflated a desire to work with the ability to do so, So the ALJ's errors are not harmless.). In sum, despite the deference owed the ALJ's subjective symptom finding, the ALJ did not articulate sufficient reasons supported by substantial evidence for discounting Aleithia's subjective symptom statements regarding her fibromyalgia. *See Rogers*, 486 F.3d at 248 ([G]iven the nature of fibromyalgia, where subjective pain complaints play an important role in the diagnosis and treatment of the condition, providing justification for discounting a claimant's statements is particularly important."). Accordingly, this case must be remanded for a new subjective symptom analysis of Aleithia's fibromyalgia pain and symptoms.

### III. CONCLUSION

For all the reasons set forth above, Aleithia Ann F.'s Motion for Summary Judgment [11] is granted, and the Commissioner's Motion for Summary Judgment [18] is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed and remanded for further proceedings consistent with this opinion. The Clerk is directed to enter judgment in favor of Plaintiff Aleithia Ann F. and against Defendant Commissioner of Social Security.

**SO ORDERED.**

Dated: June 27, 2019

_____
Sunil R. Harjani
United States Magistrate Judge